# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

NICHOLAS COURVILLE

CIVIL ACTION

VERSUS

24-327-SDD-EWD

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS
ET AL.

## RULING

This matter is before the Court on three motions. Defendants Major Dale Blackard, Nurse Karla Bringedahl, and the Louisiana Department of Public Safety and Corrections (collectively, the "DPSC Defendants") filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules").[1] Defendant Sergeant Pharoah Johnson filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6), which also includes a request for a more definite statement pursuant to Rule 12(e).[2] Finally, Defendant Major Andrew Cupil filed a Motion to Dismiss pursuant to Rule 12(b)(6).[3] Plaintiff Nicholas Courville ("Plaintiff") filed Oppositions to each Motion.[4] The DPSC Defendants filed a Reply.[5] For the reasons that follow, the Motions will be denied.

## I.    BACKGROUND

Plaintiff originally filed suit in state court in connection with injuries he allegedly sustained while he was an inmate at Dixon Correctional Institute ("DCI").[6] The case was

---

[1] Rec. Doc. 25.
[2] Rec. Doc. 27.
[3] Rec. Doc. 46.
[4] Rec. Docs. 30, 29, and 47, respectively.
[5] Rec. Doc. 31.
[6] Rec. Doc. 1-2, p. 11.

removed to this Court.[7] In his Amended Complaint, Plaintiff alleges this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367.[8]

### A. Factual Allegations

The operative Complaint[9] outlines the following alleged facts:

At the relevant time, Plaintiff was an inmate at DCI and was "disabled, wheelchair bound, had end-stage renal disease, cardiolmyopathy [sic], severe scoliosis and had been on dialysis since 2007 with congestive heart failure."[10] At DCI, inmates on dialysis are permitted to eat lunch earlier than other inmates to allow them time to receive their treatment.[11] On April 30, 2023, Plaintiff was denied his early lunch because the DCI employee serving food that day did not believe Plaintiff was on the list of inmates who were entitled to receive lunch early.[12] Plaintiff, being pushed in his wheelchair by a fellow inmate, then proceeded to another location to speak with a supervisor about the lunch issue.[13] The supervisor made a phone call and directed Plaintiff to return to the kitchen.[14] When Plaintiff returned to the kitchen, the same DCI employee again refused to serve him lunch.[15] Plaintiff then returned to the same supervisor to report that he was still being refused his meal.[16] The supervisor told Plaintiff to wait "inside the Sally Port 5" and went to the kitchen to speak to the food service employee.[17]

---

[7] Rec. Doc. 1.
[8] Rec. Doc. 22, ¶ 1.
[9] Rec. Doc. 22.
[10] *Id.* at ¶ 7.
[11] *Id.* at ¶¶ 9–11.
[12] *Id.* at ¶ 14–21.
[13] *Id.* at ¶¶ 22–23.
[14] *Id.* at ¶ 23.
[15] *Id.* at ¶¶ 24–27.
[16] *Id.* at ¶¶ 31–32.
[17] *Id.* at ¶ 33.

At this point, Plaintiff alleges he was "standing behind his wheelchair holding onto [it] supporting himself."[18] Shortly thereafter, Defendant "M. Sergeant" Pharoah Johnson ("Sergeant Johnson") entered Sally Port 5, walked over to Plaintiff, and said, "Let's go."[19] Plaintiff told Sergeant Johnson he was waiting for the supervisor to return.[20] Then, Plaintiff alleges Sergeant Johnson "grabbed [Plaintiff] by the back of his shirt and jerked him backwards causing [Plaintiff] to let go of the wheelchair handles and spin to the walk fence, where he grabbed the fence to prevent his fall."[21] Plaintiff asked Sergeant Johnson to stop being aggressive and to call the supervisor.[22] In response, Plaintiff alleges Sergeant Johnson

> placed his hands under [Plaintiff's] arms with his hands interlocked behind [Plaintiff's] head, pressing downward on his neck and then jerked [Plaintiff] backwards [away] from the fence and spun him as hard as he could to the left, at that point, M.Sgt. Pharoah Johnson put all of his weight on [Plaintiff] and broke his left knee leaving only [Plaintiff's] right leg to support both of their weight. The M.Sgts. continued force caused the tendons and ligaments in [Plaintiff's] right leg to tear and rupture. Both legs were broken at that point.[23]

After Sergeant Johnson "continued to jerk and pull on [Plaintiff], who was screaming for mercy and help," other officers came to the scene.[24] After Plaintiff stated his legs were broken, an officer called for assistance.[25] A "response team" including three nurses, Sergeant Johnson, and Defendant Major Dale Blackard ("Major Blackard") arrived on the scene, but none of them "checked [Plaintiff's] condition despite being familiar with

---

[18] *Id.* at ¶ 34.
[19] *Id.* at ¶ 37.
[20] *Id.*
[21] *Id.* at ¶ 38.
[22] *Id.* at ¶ 39.
[23] *Id.* at ¶ 42.
[24] *Id.* at ¶ 44.
[25] *Id.* at ¶ 45.

his disability and infirmity."[26] Major Blackard ordered Plaintiff to stand up, and Plaintiff replied that he could not because his legs were broken.[27] Major Blackard then ordered other officers to grab Plaintiff and lift him up, which caused Plaintiff "extreme pain."[28] The officers, at the direction of Major Blackard, then placed Plaintiff in his wheelchair "without securing the foot supports," which caused his feet to "roll[ ] under the chair as he was being pushed[,] again causing extreme pain."[29]

Plaintiff was brought to the DCI Emergency Exam Room with both hands and feet cuffed to a stretcher, which caused more pain in his legs.[30] When a nurse (whose identity Plaintiff does not specify) looked at Plaintiff's knees, she immediately declared that Plaintiff must go to the hospital.[31] Plaintiff alleges he then "heard [Defendant Nurse Karla Bringedahl ("Nurse Bringedahl")] say she was not sending him out in an ambulance."[32] After remaining "on the stretcher for two hours ignored, unattended and suffering in the infirmary,"[33] three nurses came in, looked at his legs again, and left the room.[34]

After approximately another hour passed, Sergeant Johnson entered the infirmary and saw Plaintiff still cuffed to the stretcher.[35] Sergeant Johnson said he thought Plaintiff would have gone to the hospital by then, and after looking at Plaintiff's legs said, "Man, I'm so sorry."[36]

---

[26] *Id.* at ¶ 46.
[27] *Id.* at ¶ 47.
[28] *Id.* at ¶ 50.
[29] *Id.* at ¶ 51.
[30] *Id.* at ¶ 52.
[31] *Id.* at ¶ 53.
[32] *Id.* at ¶ 54.
[33] *Id.*
[34] *Id.* at ¶¶ 55–58.
[35] *Id.* at ¶ 60.
[36] *Id.* at ¶ 61.

Another hour later, "[t]ransport officers arrived and took [Plaintiff] to [the hospital] without his legs being so much as braced or stabilized to stop them from moving. [Plaintiff] was placed in a wheelchair with his knees bent despite all of the swelling. He arrived at [the hospital] between 4:45 and 6:45 p.m."[37]

At some point, Plaintiff alleges Nurse Bringedahl "called the hospital and told the nursing staff to administer to [Plaintiff] a double dose of his blood pressure medication."[38] As a result of the excessive dosage, Plaintiff alleges "[h]is blood pressure dropped so low, he could not receive dialysis."[39]

A doctor arrived and reported Plaintiff needed emergency surgery based on his x-ray results.[40] Further (presumably after Plaintiff's surgery), a "kidney doctor opined that [Plaintiff's] blood was not right and he should not be discharged until his blood work was straightened out."[41] However, Plaintiff alleges Nurse Bringedahl "came into the room and told [Plaintiff] you are getting the hell out of here and going ba[c]k to prison."[42] Plaintiff alleges "[h]e was released on Tuesday evening never getting ba[c]k to the prison until Wednesday afternoon. He had not eaten since Saturday, because his legs were broken on Sunday."[43]

On the day of his discharge from the hospital, Plaintiff alleges he had been ordered by doctors not to bend his legs, which were in braces.[44] DCI transport allegedly arrived at the hospital "to retrieve [Plaintiff] with no way to properly transport him without violating

---

[37] *Id.* at ¶ 62.
[38] *Id.* at ¶ 63.
[39] *Id.* at ¶ 64.
[40] *Id.* at ¶ 65.
[41] *Id.* at ¶ 66.
[42] *Id.*
[43] *Id.*
[44] *Id.* at ¶ 67.

[the] doctor's order not to bend the legs."[45] The DCI transport officer was told over the telephone by his supervisor, Defendant Major Andrew Cupil ("Major Cupil"), to "do whatever it takes to get [Plaintiff] back here."[46] Plaintiff alleges the "[d]octor's orders were disregarded."[47]

Upon returning to DCI, Plaintiff alleges he was placed in an "isolation lock down cell," where "[h]e laid on his bed helpless unable to move and unable to get to a urinal[;] he was forced to urinate and defecate on himself."[48]

On May 6, 2023, Plaintiff "went for dialysis, but his blood work was so off (low hemoglobin, etc.), he had to be sent back to the hospital as an emergency. Again, an ambulance would not be provided."[49] Plaintiff alleges "[h]e had been bleeding internally and had been complaining of severe stomach pains and blood in his stool."[50] He was given four pints of blood at the hospital.[51]

After the second hospital trip, Plaintiff alleges

> [h]e was sent back to the prison subjected to the same neglect. His dialysis was cut short and not provided at the appropriate times. He was wearing a yellow arm bracelet that indicated he was a fall risk. Both legs were in straight leg braces and he had 20 staples in both knees along with incisions, yet, he was not being served food or water in his cell. He was expected to get up and get his food from the food tray in the door of the cell. … He was being forced out of his bed with a hydraulic lift and walker unassisted to walk to the cell door to retrieve food and medi[c]ation.[52]

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at ¶ 68.
[49] *Id.* at ¶ 70.
[50] *Id.* at ¶ 71.
[51] *Id.* at ¶ 72.
[52] *Id.* at ¶¶ 73–74.

Plaintiff further states he was "in the back of the infirmary in a disciplinary cell w[h]ere he stayed for a month. He had no shower for 17 days and often did not receive food as he was unable to get up. He did not receive wound care."[53]

Plaintiff alleges Nurse Bringedahl discontinued his pain medication.[54] The withholding of his medication allegedly continued even after Plaintiff's kidney doctor contacted the DCI infirmary to stress the importance of timely and consistent treatment.[55]

Plaintiff was later sent to the hospital again due to internal bleeding, and another surgical procedure took place.[56] Plaintiff alleges, "[o]nce again, while still under orders not to bend his legs, DCI made no arraignment [sic] for adequate transportation. He was lifted into a van with his legs inside and body outside in the rain."[57] In the process of placing Plaintiff into the DCI van to be transported back to the facility, a straight board was placed under Plaintiff's legs and he "was hand cuffed and shackled to a waist chain and unable to hold onto anything for support."[58] Major Cupil, who was in charge of transporting Plaintiff on this occasion, could not get the van door closed, so he summoned a second van.[59] As Plaintiff was being pulled out of the first van to be placed into the second van, he alleges "the board on which he was seated began coming out from under [him]."[60] Plaintiff told Major Cupil he was slipping, and Major Cupil told Plaintiff to "be quiet."[61] As he was being moved by Major Cupil and another unidentified individual, the support board and wheelchair fell, causing Plaintiff to fall backwards while cuffed to the waist belt and in

---

[53] *Id.* at ¶ 77.
[54] *Id.* at ¶ 78.
[55] *Id.* at ¶ 79.
[56] *Id.* at ¶ 83.
[57] *Id.* at ¶ 84.
[58] *Id.*
[59] *Id.* at ¶ 85.
[60] *Id.* at ¶ 86.
[61] *Id.*

locked leg braces.[62] Plaintiff "fell down onto the lift landing on his back a[n]d butt and it felt as though his legs re-broke. His back, neck[,] tail bone[,] and left elbow were injured."[63] Major Cupil ordered some unidentified guards to "lift [Plaintiff] and place him on the floor of the van through the rear door where he was laid under the rear seat."[64] Plaintiff alleges a hospital security supervisor, after seeing Plaintiff on the floor of the van drenched with rain and crying in pain, filed a written report of abuse and notified Plaintiff's doctors.[65]

Plaintiff alleges Nurse Bringedahl subsequently refused to fill another pain medication order prescribed by Plaintiff's doctor.[66] Plaintiff further alleges Nurse Bringedahl supervised the medical staff, including another nurse who would leave Plaintiff's medicine and food outside Plaintiff's cell so that Plaintiff had to get out of bed and retrieve it.[67] At one point approximately one month after the initial injury, Plaintiff fell and injured his shoulder while attempting to make his way to a water fountain about fifteen feet from his bed.[68] Additionally, in June of 2023, Plaintiff alleges Nurse Bringedahl failed to refer Plaintiff to physical therapy despite knowing he may never walk again without that treatment.[69]

## B. Causes of Action

Based on the foregoing facts and resulting injuries, Plaintiff lodges claims under both federal and state law. The Court notes the lack of clarity of several aspects of the operative Complaint, specifically regarding the identification of the specific Defendants

---

[62] *Id.* at ¶ 87.
[63] *Id.* at ¶ 88.
[64] *Id.* at ¶ 90.
[65] *Id.* at ¶¶ 91–93.
[66] *Id.* at ¶ 94.
[67] *Id.* at ¶¶ 96–97.
[68] *Id.* at ¶ 98.
[69] *Id.* at ¶ 99.

against whom each claim is made.[70] Nonetheless, the Court's review of the pleadings and Plaintiff's subsequent clarification of the causes of action reveals the following claims:

- As to Defendant Sergeant Pharoah Johnson: 1) negligence;[71] 2) battery;[72] and 3) 42 U.S.C. § 1983 claim for violation of Plaintiff's constitutional rights under the Eighth Amendment.[73]

- As to Defendants Major Dale Blackard and Nurse Karla Bringedahl: negligence.[74]

- As to Defendant Major Andrew Cupil: negligence.[75]

- As to Defendant Louisiana Department of Public Safety and Corrections: vicarious liability "for the tortious acts committed against third parties by its employees during the course and scope of employment and while under its control, direction and supervision."[76]

---

[70] For example, the operative Complaint contains several vague references such as "the Defendant health care provider" (presumably a reference to Nurse Bringedahl) and "the Defendant Major" (which could be a reference to either Major Blackard or Major Cupil). Rec. Doc. 22, ¶¶ 118, 124. Also, referencing no Defendant in particular, Plaintiff at one point alleges: "Violating numerous inmates rights and failure to follow rules and regulations implemented for the protection of inmates constitutes deliberate indifference." Rec. Doc. 22, ¶ 107. Plaintiff ultimately provided some clarification in his Opposition briefs with respect to these ambiguities.

[71] *Id.* at ¶¶ 117, 119–121.

[72] *Id.* at ¶ 117.

[73] *Id.* at ¶¶ 131–140.

[74] *Id.* at ¶¶ 118, 124–126. The Court notes that in the Amended Complaint (¶ 118), Plaintiff states that the conduct of "the Defendant Major" (presumably Major Blackard based on the explanation of the conduct) "is a battery under state law." However, in opposing the DPSC Defendants' Motion to Dismiss, Plaintiff states: "[Major] Blackard has failed to point to any allegations in the Amended Complaint that accuse him of a battery." Rec. Doc. 30, p. 4. Accordingly, the Court finds that Plaintiff has not pled a battery claim against Major Blackard.

[75] *Id.* at ¶ 127.

[76] *Id.* at ¶ 130.

II.    **LAW AND ANALYSIS**

A. **Rule 12(b)(1) Motions to Dismiss**

1.  **Legal Standard**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case. The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case.[77]

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[78] Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[79] In reviewing a motion under Rule 12(b)(1), a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[80] "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[81]

---

[77] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[78] *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).
[79] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir.2008)).
[80] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).
[81] *Ramming*, 281 F.3d at 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## 2.  Discussion

### i.    Preliminary Note on Subject Matter Jurisdiction

The Court pauses at the outset to examine its jurisdiction over this matter.[82] As noted, it is alleged this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).[83]

Plaintiff's only federal claim is a § 1983 claim against Sergeant Johnson. For reasons explained below, Sergeant Johnson's arguments for dismissal of this claim will be rejected. Therefore, the § 1983 claim presents a federal question, and the Court has jurisdiction.

Plaintiff's remaining claims are brought under state law. Pursuant to 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over state-law claims if they "form part of the same case or controversy" with a claim over which the court has original jurisdiction. If a court finds that it has supplemental jurisdiction under 28 U.S.C. § 1367(a), it may nonetheless decline to exercise that jurisdiction under the circumstances listed in 28 U.S.C. § 1367(c).

None of the parties address whether the state and federal claims form part of the same case or controversy under 28 U.S.C. § 1367(a). Nonetheless, the Court does so here because "[a] court must satisfy itself that a claim falls within the category laid out in § 1367(a), for otherwise there is no federal jurisdiction."[84]

---

[82] "[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

[83] Rec. Doc. 22, ¶ 1.

[84] *Kiser v. Moyal*, No. CV 23-464-SDD-SDJ, 2024 WL 4229936, at *14 (M.D. La. Sept. 18, 2024) (quoting *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 850 (7th Cir. 1994)).

It is generally agreed that the § 1367(a) "same case or controversy" requirement codified the holding of the Supreme Court's earlier decision in *United Mine Workers of America v. Gibbs*.[85] In *Gibbs*, the Court held that for supplemental jurisdiction to exist, "[t]he state and federal claims must arise from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding."[86] The limits of the "same case or controversy" standard are not clearly defined by the jurisprudence. Some courts within the Fifth Circuit note that the standard "is expansive, extending supplemental jurisdiction to its constitutional limit,"[87] and "[a] loose factual connection between the claims is generally sufficient."[88] On the other hand, it has also been recognized that it is unclear "how to proceed when there is some overlap, *but not a perfect factual overlap*, between the federal and state claims in question, and the Fifth Circuit does not appear to have addressed this issue head on."[89]

Here, the Court finds sufficient factual overlap exists between the federal and state-law claims to support supplemental jurisdiction. All the claims in this case involve the alleged mistreatment of Plaintiff by DCI personnel, beginning with the initial injury by Sergeant Johnson and continuing with subsequent mistreatment by the other Defendants, resulting in related additional harm or exacerbation of the same initial injury. The allegations against all the Defendants are interconnected such that, taken together, "the

---

[85] 383 U.S. 715 (1966). Though there is some debate on whether § 1367(a) codified the *Gibbs* holding, § 1367(a) "clearly embraces *at least* the Gibbs standard. The only debate is whether the Constitution goes beyond Gibbs." 13D Wright & Miller, Fed. Prac. & Proc. Juris. § 3567.1 (3d ed.) (emphasis in original).
[86] *Gibbs*, 383 U.S. at 725.
[87] *Lucarino v. Con-Dive, LLC*, No. H-09-2548, 2010 WL 786546, at *2 (S.D. Tex. Mar. 5, 2010).
[88] *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2012 WL 195533, at *3 (E.D. La. Jan. 23, 2012).
[89] *Banik v. Tamez*, No. 7:16-cv-00462, 2016 WL 6122729, at *6 (S.D. Tex. Oct. 20, 2016) (emphasis in original).

entire action before the [C]ourt comprises but one constitutional 'case.'"[90] Therefore, the Court finds that supplemental jurisdiction exists over the state-law claims pursuant to § 1367(a).[91]

Turning now to the parties' arguments, both the DPSC Defendants and Sergeant Johnson request dismissal under Rule 12(b)(1). The Court will analyze the arguments of these parties in turn.

### ii.    DPSC Defendants' Rule 12(b)(1) Motion

DPSC Defendants argue that the Louisiana Department of Public Safety and Corrections (the "Department") is not a "person" under 42 U.S.C. § 1983.[92] Accordingly, DPSC Defendants seek dismissal of any § 1983 claims for monetary damages against the Department itself as well as those made against Major Blackard and Nurse Bringedahl in their official capacities.[93]

DPSC Defendants are correct in noting that, according to the Supreme Court, "a State is not a person within the meaning of § 1983."[94] Furthermore, it is clear that this rule applies to "arms of the state," and to a state's "officials acting in their official capacities."[95] And the Department "is indisputably an 'arm of the state.'"[96] However, the Court notes that according to the operative Complaint, Major Blackard and Nurse Bringedahl were

---

[90] *Gibbs*, 383 U.S. at 725.

[91] The Court acknowledges that 28 U.S.C. § 1367(c) provides four discretionary grounds for declining supplemental jurisdiction. The Court will not decline supplemental jurisdiction in this case because 1) the claims do not "raise[ ] a novel or complex issue of State law," 2) the state-law claims do not "substantially predominate[ ]" over the § 1983 claim against Sergeant Johnson; 3) the Court has not "dismissed all claims over which it has original jurisdiction," and 4) the Court finds no "other compelling reasons for declining jurisdiction." *See* 28 U.S.C. § 1367(c)(1–4).

[92] Rec. Doc. 25-1, p. 4.

[93] *Id.*

[94] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

[95] *Med RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Will*, 491 U.S. at 71).

[96] *Traweek v. Gusman*, 414 F. Supp. 3d 847, 858 (E.D. La. 2019) (citing *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999)).

"sued individually."[97] On this point, Plaintiff makes clear in his Opposition that no official-capacity claims are brought against these two Defendants.[98] Plaintiff also clarifies that he is only making state-law claims for negligence and vicarious liability against the DPSC Defendants.[99] Therefore, DPSC Defendants' argument regarding Plaintiff's inability to assert § 1983 claims is inapposite because no such claims are brought against them.

The DPSC Defendants do not expressly raise by name the issue of sovereign immunity or the Eleventh Amendment.[100] However, Plaintiff does so in his Opposition, arguing DPSC Defendants cannot raise Eleventh Amendment immunity.[101] The Fifth Circuit has noted that courts may consider the issue of sovereign immunity *sua sponte* "because it bears on [a] court's subject-matter jurisdiction."[102] Because the DPSC Defendants challenged this Court's jurisdiction based on the related premise that the Department is not a suable "person" under § 1983, the Court will address the issue of Eleventh Amendment immunity.

---

[97] Rec. Doc. 22, ¶ 4.
[98] Rec. Doc. 30, p. 3.
[99] *Id.* at pp. 2–3, 14.
[100] The Court notes the following clarification by the Supreme Court in *Alden v. Maine*, 527 U.S. 706, 712–13 (1999) regarding the concept of sovereign immunity and the Eleventh Amendment:

> The Eleventh Amendment makes explicit reference to the States' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amdt. 11. We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

[101] *Id.* at p. 14.
[102] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 (5th Cir. 2002) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 465–66 (5th Cir.1999)).

Most straightforwardly pertinent to the Eleventh Amendment issue is Plaintiff's claim against the Department itself for vicarious liability under Louisiana tort law. As the Supreme Court explains, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."[103] As a general proposition, Eleventh Amendment immunity extends with equal force to pendent state-law claims, such as the negligence claims against Nurse Bringedahl and Major Blackard and the vicarious liability theory against the Department.[104] However, Plaintiff argues the Department's removal of the action to this Court constitutes a waiver of any claim to Eleventh Amendment immunity.[105] On this point, the Supreme Court held in *Lapides v. Bd. of Regents of Univ. Sys. of Georgia* that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum."[106] In so holding, the Court reasoned: "It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."[107] In line with *Lapides*, the Court finds that the Department has waived its Eleventh Amendment immunity from suit by removing this action to federal court.[108]

---

[103] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).
[104] *See Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990). *See also Pennhurst*, 465 U.S. at 117–121.
[105] Rec. Doc. 30, pp. 15–17.
[106] *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 624 (2002).
[107] *Id.* at 618.
[108] Rec. Doc. 1.

Nurse Bringedahl and Major Blackard are sued in their individual capacities. As a general rule, "the Eleventh Amendment does not ordinarily immunize a public official from an action against him in his individual capacity."[109] However, the Supreme Court has acknowledged an exception to this general rule: "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."[110] In other words, "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter," and the state could invoke its immunity in such a situation.[111] Based on this principle, the Fifth Circuit held in *Hughes v. Savell* that an inmate's state-law claim against an individual prison officer was barred by the Eleventh Amendment because, despite the plaintiff's argument that he was suing the officer in his individual capacity, "Louisiana tort law places the duty to safeguard [the plaintiff] on the State of Louisiana and designates [the officer] as Louisiana's agent. In order for [the plaintiff] to plead a cause of action for [the officer's] negligence, [the plaintiff] must sue [the officer] as an agent of the state."[112] That is, *Hughes* found that the plaintiff's failure-to-protect claim against the officer was actually a suit against the state because, as a matter of Louisiana law, the state is liable for the negligence of its employees in failing to protect an inmate.[113]

---

[109] *Henley v. Simpson*, 527 F. App'x 303, 306 (5th Cir. 2013). *See also Hafer v. Melo*, 502 U.S. 21 (1991).
[110] *Id.* (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides*, 535 U.S. 613).
[111] *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)).
[112] *Hughes*, 902 F.2d at 379.
[113] In *Copsey v. Swearingen*, 762 F. Supp. 1250, 1255 n.2 (M.D. La. 1991), another section of this Court questioned the *Hughes* court's reasoning follows: "The liability of the state for negligent acts of correctional officers arises under Article 2320 of the Louisiana Civil Code which makes 'the master' liable *in solido* with the 'servant' for 'damages occasioned by the servant.' Thus, to the extent that the case might be construed to imply that *only* the state incurs liability for acts of its employees, *Hughes* is clearly in error as to Louisiana

Here, however, the Court finds it unnecessary to employ the *Hughes* analysis. As explained above, the Department itself has waived its immunity from suit in federal court by removing this case. Therefore, regardless of whether the Department is considered the "real, substantial party in interest" in connection with the individual capacity tort claims against Nurse Bringedahl and Major Blackard, the Department cannot avail itself of Eleventh Amendment immunity from suit.[114]

For the reasons stated above, DPSC Defendants' Rule 12(b)(1) Motion is denied.

### iii.    Sergeant Johnson's Rule 12(b)(1) Motion

Sergeant Johnson seeks "dismissal of any official capacity claims under § 1983" because officials sued in their official capacities are not suable "persons" under § 1983.[115] Plaintiff has asserted a § 1983 claim against Sergeant Johnson.[116] However, Sergeant Johnson was only sued in his individual capacity.[117] According to the Supreme Court, "officers sued in their personal capacity come to court as individuals. A government official

---

law. *See e.g. Foster v. Hampton,* 381 So.2d 789 (La. 1980), specifically holding that employee and employer are both liable in solido.'" (emphasis added). *See also Deal v. Dep't of Corr.*, No. CV 15-00534-BAJ-EWD, 2017 WL 6566198, at *3–4 (M.D. La. Dec. 22, 2017) (reading *Hughes* as requiring dismissal of negligence claims against individual prison officers based on "failure to protect Plaintiff from an attack by another inmate," but not requiring dismissal of "other state law negligence claims.").

[114] In *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252–53 (5th Cir. 2005), the Fifth Circuit explained that "a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately—immunity from suit and immunity from liability." The court explained that a state can waive its immunity *from suit* in federal court by removing a case to federal court, but "[w]hether [the state] has retained a separate immunity *from liability* is an issue that must be decided according to that state's law." *Id.* (emphasis added). In other words, the state's waiver of immunity from suit by removal "does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts." *Meyers ex rel. Benzing v. Texas*, 454 F.3d 503, 504 (5th Cir. 2006), *aff'g on reh'g*, 410 F.3d 236. Given the jurisdictional context of the Eleventh Amendment analysis in this case, the Court leaves the issue of DPSC Defendants' immunity from liability under Louisiana law for another day. *See iMCB, LLC v. Bd. of Com. & Indus.*, No. CV 17-75-JWD-JCW, 2017 WL 6000349, at *11 (M.D. La. Dec. 4, 2017).

[115] Rec. Doc. 27-1, p. 6.

[116] Rec. Doc. 22, ¶¶ 131–140.

[117] *Id.* at ¶ 5. As the Supreme Court clarified in *Hafer v. Melo*, "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." 502 U.S. at 26.

in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person'" under § 1983.[118] Therefore, dismissal of the § 1983 claim on this basis is denied.

Sergeant Johnson also raises Eleventh Amendment immunity.[119] As with Major Blackard and Nurse Bringedahl, the Court finds that 1) the Department's removal of the case to federal court waived any claim to Eleventh Amendment immunity from suit;[120] and 2) "a suit against a state officer in his or her individual capacity for money damages is not a suit against the state for purposes of Eleventh Amendment immunity," such that the Amendment is generally no bar to such a suit (unless the state is the real, substantial party in interest).[121] Therefore, Plaintiff's claims against Sergeant Johnson under both § 1983 and Louisiana tort law are not barred by the Eleventh Amendment.

For these reasons, Sergeant Johnson's Rule 12(b)(1) Motion is denied.

## B. Rule 12(b)(6) Motions to Dismiss

### 1. Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[122] The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[118] *Hafer*, 502 U.S. at 27.
[119] Rec. Doc. 27-1, p. 6.
[120] As another section of this Court has explained, "[a]lthough *Lapides* was limited to state-law claims, the Fifth Circuit in *Meyers ex rel. Benzing* extended the waiver of sovereign immunity by removal of private suits by the state on federal law claims constitutes a valid waiver of the state's sovereign immunity. Further, the Fifth Circuit has applied this removal principal to § 1983 claims." *Williams v. Louisiana*, No. CV 17-453-JWD-EWD, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019) (citing *Meyers ex rel. Benzing*, 410 F.3d at 248; *Skinner v. Gragg*, 650 F. App'x 214, 218 (5th Cir. 2016); *Spooner v. Jackson*, 251 F. App'x 919, 924 (5th Cir. 2007)).
[121] *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143, at *3 (5th Cir. 2001) (citing *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir.1992); *Crane v. Texas,* 759 F.2d 412, 428 n.17 (5th Cir. 1985); *Hafer,* 502 U.S. at 30-31). *See also Henley*, 527 F. App'x at 306; *Hughes*, 902 F.2d at 377–79. For the same reason as explained in connection with the DPSC Defendants' 12(b)(1) Motion, the Court will not consider whether the state is the real, substantial party in interest at this time.
[122] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

the complaint by reference, and matters of which a court may take judicial notice."[123] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[124]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[125] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[126] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[127] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[128] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[129] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[130]

---

[123] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[124] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[125] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).
[126] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[127] *Id*.
[128] *Id*.
[129] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. Jan. 10, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[130] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### 2. Discussion

All three sets of Defendants request dismissal pursuant to Rule 12(b)(6). The Court will consider each Motion in turn.

### i.     DPSC Defendants' Rule 12(b)(6) Motion

### a. Qualified Immunity

First, DPSC Defendants argue Nurse Bringedahl and Major Blackard are entitled to qualified immunity with respect to Plaintiff's § 1983 claims.[131] However, as noted above, Plaintiff brings only state-law negligence claims against these two Defendants. According to the Fifth Circuit, "[f]ederal qualified immunity does not apply to state-law claims."[132] Instead, "[i]n evaluating a motion to dismiss a state claim on the grounds of qualified immunity, federal courts must apply the state's substantive law of qualified immunity."[133] And most significantly for purposes of DPSC Defendants' Motion, "qualified immunity does not apply to Louisiana tort claims."[134] Accordingly, the Court finds DPSC Defendants' qualified immunity argument to be misplaced.

### b. Discretionary Immunity

Next, DPSC Defendants argue Louisiana's discretionary immunity statute, La. R.S. 9:2798.1, bars Plaintiff's tort claims against Nurse Bringedahl and Major Blackard.[135] The statute provides, in pertinent part:

---

[131] Rec. Doc. 25-1, p. 6.
[132] *Tuttle v. Sepolio*, 68 F.4th 969, 976 (5th Cir. 2023) (citing *Brown v. Miller*, 519 F.3d 231, 238–39 (5th Cir. 2008)).
[133] *Brown*, 519 F.3d at 239 (citing *Sorey v. Kellett,* 849 F.2d 960, 961–63 (5th Cir.1988)).
[134] *Williams v. E. Baton Rouge City/Par.*, No. CV 23-01581-BAJ-EWD, 2024 WL 4241627, at *10 (M.D. La. Sept. 19, 2024) (quoting *Beroid v. LaFleur*, No. 21-cv-516, 2022 WL 2826228, at *7 (W.D. La. June 2, 2022)). *See also Cloud v. Stone*, No. CV 18-1070, 2018 WL 7050844, at *5 (W.D. La. Dec. 19, 2018), *report and recommendation adopted*, No. CV 18-1070, 2019 WL 238066 (W.D. La. Jan. 16, 2019) ("although Louisiana applies qualified immunity principles to state constitutional law claims, that immunity does not extend to tort claims.") (citations omitted).
[135] Rec. Doc. 25-1, pp. 19–22.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.[136]

Relying on Louisiana jurisprudence, this Court has found that discretionary immunity is unavailable as an affirmative defense at the motion-to-dismiss stage because of the fact-intensive nature of the required analysis.[137] For this reason, DPSC Defendants' discretionary immunity argument is rejected at this time.[138]

### c. Sufficiency of Allegations

DPSC Defendants argue that Plaintiff has failed to state plausible negligence claims against Nurse Bringedahl and Major Blackard, likewise resulting in the failure of the vicarious liability theory against the Department.[139]

A plaintiff must allege five elements to state a claim for negligence under Louisiana law: !!

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact

---

[136] La. R.S. 9:2798.1.
[137] *Williams v. Sanders*, 723 F. Supp. 3d 467, 474 (M.D. La. 2024) (citing *Bouchereau v. Gautreaux*, 2015 WL 5321285, at *15 (M.D. La. Sept. 11, 2015); *Lee v. Ard*, 2017 WL 5349493, at *12 (M.D. La. Nov. 13, 2017)). *See also Lambert v. Riverboat Gaming Enf't. Div.*, 96–1856 (La.App. 1 Cir 12/29/97), 706 So.2d 172, 177–78.
[138] DPSC Defendants also cited La. R.S. 2800.10 and 2800.19, but provided no analysis regarding their application. Rec. Doc. 25-1, pp. 19–20. The Court finds the statutes irrelevant to the issues raised by DPSC Defendants' Motion.
[139] Rec. Doc. 25-1, pp. 15–19.

element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).[140]

"A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[141]

### Nurse Bringedahl

The Court first considers the negligence claim asserted against Nurse Bringedahl. In short, Plaintiff alleges Nurse Bringedahl was negligent by: delaying or interfering with Plaintiff's initial trip to the hospital;[142] telling the hospital's nursing staff to administer Plaintiff a double dose of his blood pressure medication;[143] insisting Plaintiff be discharged from the hospital sooner than recommended by the doctors;[144] discontinuing Plaintiff's pain medication;[145] and failing to make a physical therapy referral for Plaintiff.[146] Plaintiff also alleges mistreatment by other DCI nurses "over which [Nurse Bringedahl] provided supervision."[147]

Regarding the first negligence element, "prison authorities owe a duty to inmates to provide reasonable medical care."[148] DPSC Defendants acknowledge Nurse Bringedahl "had a duty to provide Plaintiff with reasonable medical care as a nurse practitioner at DCI."[149] Thus, the first element is satisfied.

---

[140] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).
[141] *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 321 (La. 1994)).
[142] Rec. Doc. 22, ¶ 54.
[143] *Id.* at ¶ 63.
[144] *Id.* at ¶ 66.
[145] *Id.* at ¶ 78.
[146] *Id.* at ¶ 99.
[147] *Id.* at ¶ 97.
[148] *Savoy v. St. Landry Par. Council*, No. CIV.A. 08-0232, 2009 WL 3815762, at *9 (W.D. La. Nov. 13, 2009) (citing *Corley v. Prator*, 290 Fed.Appx. 749, 753 (5th Cir.2008)) (citing, in turn, *Harper v. Goodwin*, 41,053 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1160, 1163)).
[149] Rec. Doc. 25-1, p. 15.

The second element is breach of the duty, which is "the failure to exercise reasonable care under the circumstances."[150] DPSC Defendants argue Plaintiff has failed to allege Nurse Bringedahl breached her duty because "Plaintiff states throughout his complaint that [Nurse] Bringedahl did in fact provide Plaintiff with medical care," and "[m]ost of the care alleged to have been received by Plaintiff was by other people, not [Nurse] Bringedahl."[151] Aside from a cursory recitation of the facts, Plaintiff does not provide meaningful analysis on this element in his Opposition.[152]

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the second element has been sufficiently pled. According to the operative Complaint, Nurse Bringedahl unreasonably contributed to a delay in Plaintiff's initial hospital visit despite his serious injuries and blocked Plaintiff from receiving his doctor-ordered medication.[153] The Fifth Circuit has explained that an inmate can demonstrate an Eighth Amendment violation (a standard significantly higher than state-law negligence) by showing that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[154] The allegations against Nurse Bringedahl give rise to a plausible claim for negligence, which only requires unreasonableness under the circumstances (as opposed to "a wanton disregard for any serious medical needs" for an Eighth Amendment claim).

---

[150] *D.C. v. St. Landry Par. Sch. Bd.*, 2000-01304 (La. App. 3 Cir. 3/7/01), 802 So. 2d 19, 22 (citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 6–1, at 139 (1996)).
[151] Rec. Doc. 25-1, p. 15.
[152] Rec. Doc. 30, pp. 7–8.
[153] Rec. Doc. 22, ¶¶ 54, 78, 94.
[154] *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

Turning to the third element, Plaintiff must allege that Nurse Bringedahl's conduct was a cause-in-fact (or a "but-for" cause) of his injuries. In cases such as this where multiple causes of harm are alleged, cause-in-fact may be found to exist "when the defendant's conduct was a 'substantial factor' in bringing about [the] plaintiff's harm."[155] DPSC Defendants argue this element fails because "Plaintiff has alleged that his injuries were caused primarily by another defendant," and "despite Plaintiff saying that [Nurse] Bringedahl's actions exacerbated his injuries, this alone does not prove that [Nurse] Bringedahl was the cause of the injuries or the actual exacerbation of the injuries, especially considering the nature of the injuries."[156] This argument lacks merit. First, even if Plaintiff's injuries were "primarily" caused by another defendant, there can be multiple causes-in-fact of a plaintiff's injuries under Louisiana tort law. Further, at this stage, Plaintiff does not need to "prove" anything. Rule 12(b)(6) only tests the sufficiency of the allegations, and Plaintiff sufficiently alleges that Nurse Bringedahl's conduct caused him harm or exacerbated his injuries.[157] Therefore, Plaintiff survives the Motion to Dismiss as to this element.

The fourth element is legal cause, which asks "whether the particular risk falls within the scope of the duty."[158] On this element, DPSC Defendants argue: "[Nurse] Bringedahl is alleged to have provided Plaintiff with treatment. Just because Plaintiff was not happy with the treatment does not mean that the treatment was negligent."[159] This argument fails to address Plaintiff's principal allegations against Nurse Bringedahl

---

[155] *Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991), *on reh'g* (May 28, 1992).
[156] Rec. Doc. 25-1, p. 16.
[157] Rec. Doc. 22, ¶ 115.
[158] *Domingue v. TA Operating, LLC*, No. CV 21-606-SDD-RLB, 2023 WL 174967, at *6 (M.D. La. Jan. 12, 2023) (quoting *Rando v. Anco Insulations Inc.*, 2008-1163 (La. 2009), 16 So.3d 1065, 1088).
[159] Rec. Doc. 25-1, p. 16.

(namely, delaying the trip to the hospital and withholding Plaintiff's medication), and the Court struggles to see how it even connects to the scope-of-duty question. In the Court's view, Nurse Bringedahl's duty to provide reasonable medical care plainly encompasses the risk that Plaintiff would sustain additional injuries or that his condition would worsen. Therefore, this element is sufficiently pled.

Finally, Plaintiff adequately alleges actual damages due to his substandard treatment by Nurse Bringedahl.[160]

Because Plaintiff adequately pled all five elements, DPSC Defendants have failed to demonstrate entitlement to dismissal of the negligence claim against Nurse Bringedahl under Rule 12(b)(6).

## Major Blackard

Plaintiff alleges Major Blackard ordered Plaintiff to stand up shortly after his legs were broken and then ordered other officers to lift Plaintiff off the ground and put him in his wheelchair without securing the foot supports.[161] The operative Complaint sets forth the negligence claim as follows:

> [Major Blackard] knew or should have known that when [Plaintiff] told him repeatedly his legs were broken and when there were medical persons on hand, he should have allowed an examination an[d] he should have allowed an x-ray to determine the nature of the injury instead of ordering such person to stand on broken legs and then causing such person to be thrown in a wheel chair with no foot supports and that running over his feet would cause exacerbation of injury.[162]

---

[160] Rec. Doc. 22, ¶ 115.
[161] *Id.* at ¶¶ 47, 50–51.
[162] *Id.* at ¶ 118.

Prison authorities owe a general duty of "reasonable care to protect inmates from harm."[163] DPSC Defendants concede Major Blackard owed Plaintiff a duty; in their words, Major Blackard "had a duty to assist in the transport of Plaintiff to the treatment center" at DCI.[164]

DPSC Defendants argue no breach of duty has been alleged because, according to the operative Complaint, Major Blackard ultimately did transport Plaintiff to the DCI treatment facility.[165] This argument ignores Plaintiff's main allegation that, in the process, Major Blackard unreasonably subjected Plaintiff to further harm by having him forced onto his wheelchair without securing his feet and without seeking medical assistance or advice prior to doing so. Plaintiff adequately alleges that Major Blackard's conduct was unreasonable under the circumstances.

As to cause-in-fact, DPSC Defendants repeat verbatim the same argument made for Nurse Bringedahl, stating: "Plaintiff has alleged that his injuries were caused primarily by another defendant," and "despite Plaintiff saying that [Major] Blackard's actions exacerbated his injuries, this alone does not prove that [Major] Blackard was the cause of the injuries or the actual exacerbation of the injuries, especially considering the nature of the injuries."[166] Again, this argument does not compel dismissal for failure to state a claim.

Regarding legal cause, DPSC Defendants argue: "[Major] Blackard is alleged to have transported Plaintiff to the treatment center after he had received serious injuries. Just because Plaintiff was not happy with [Major] Blackard's alleged actions while he was

---

[163] *Hardy v. Foti*, 2001-1257 (La. App. 4 Cir. 2/27/02), 812 So. 2d 792, 794.
[164] Rec. Doc. 25-1, p. 16.
[165] *Id.* at pp. 16–17.
[166] *Id.* at p. 17.

being transported to the treatment center, this does not mean that [Major] Blackard was negligent."[167] This argument is rejected for the same reasons as explained above in connection with Nurse Bringedahl. The proper inquiry is whether Major Blackard's duty of reasonable care to protect Plaintiff from harm under these circumstances encompasses the risk of further injury to Plaintiff or exacerbation of his condition. The Court finds that it does. Therefore, DPSC Defendants have failed to show entitlement to dismissal on this element.

Lastly, the Court finds the operative Complaint gives rise to a plausible inference that Major Blackard's conduct resulted in additional injury to Plaintiff's legs, thereby satisfying the damages element.[168]

Because Plaintiff adequately pled all five elements, DPSC Defendants have failed to demonstrate entitlement to dismissal of the negligence claim against Major Blackard under Rule 12(b)(6).

## **Vicarious Liability of the Department**

Plaintiff also asserts a claim against the Department for vicarious liability based on the negligence of Nurse Bringedahl and Major Blackard.[169] The principle of vicarious liability in Louisiana law is codified in article 2320 of the Civil Code, which provides, in pertinent part: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."[170]

---

[167] *Id.*
[168] Rec. Doc. 22, ¶¶ 50–51, 115.
[169] *Id.* at ¶¶ 5, 130.
[170] La. Civ. Code art. 2320.

DPSC Defendants' only argument for dismissal of the vicarious liability claim is that the underlying negligence claims against Nurse Bringedahl and Major Blackard should be dismissed.[171] Because the underlying negligence claims are not dismissed, the vicarious liability claim against the Department survives as well.

For the foregoing reasons, DPSC Defendants' Motion is denied to the extent it seeks dismissal pursuant to Rule 12(b)(6) of Plaintiff's state-law claims against the Department, Nurse Bringedahl, and Major Blackard.

### ii. Sergeant Johnson's Rule 12(b)(6) Motion

#### a. Qualified Immunity

One paragraph of Sergeant Johnson's brief vaguely refers to an "individual defendant's immunity defense" and the "protections of official immunity."[172] Plaintiff reads that language to be an apparent attempt by Sergeant Johnson to raise the defense of qualified immunity, and his Opposition contains a section arguing against its application.[173]

The qualified immunity defense is a familiar one, shielding "federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[174]

The Court finds that Sergeant Johnson did not raise the defense of qualified immunity in his Motion. Sergeant Johnson does not mention or discuss the qualified

---

[171] Rec. Doc. 25-1, pp. 18–19.
[172] Rec. Doc. 27-1, p. 5 (quoting *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 903-04 (E.D. La. 2001)).
[173] Rec. Doc. 29, pp. 7–12.
[174] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

immunity standard. The Motion's only discussion of immunity relates to dismissal of any official-capacity claims pursuant to sovereign immunity.[175] Qualified immunity, by contrast, only applies to individual-capacity claims,[176] and Sergeant Johnson never argues that he is immune from any individual-capacity claims. Therefore, the Court will not consider whether Sergeant Johnson is entitled to qualified immunity as to Plaintiff's § 1983 claim.

### b. Sufficiency of Allegations

Sergeant Johnson makes no argument regarding the application of the legal elements of Plaintiff's claims to the facts alleged against him. Instead, he only argues that "Plaintiff's status as an inmate makes several of his requests for damages untenable."[177] Specifically, Sergeant Johnson argues Plaintiff cannot recover for medical expenses, lost wages, loss of employment opportunities, or "inconvenience."[178] Plaintiff does not directly address this aspect of Sergeant Johnson's Motion.

The Court finds that Sergeant Johnson's argument is misguided. On a Rule 12(b)(6) motion, the Court accepts the plaintiff's factual allegations as true and considers whether a plausible claim to relief has been stated. Rather than attack the sufficiency of Plaintiff's factual allegations, Sergeant Johnson only addresses parts of the prayer for relief outlined in the Amended Complaint. "Whether a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief asked for can be granted, but whether the plaintiff is entitled to *any* relief."[179] Here, Sergeant Johnson attacks the

---

[175] Rec. Doc. 27-1, pp. 5–8.

[176] *Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013).

[177] Rec. Doc. 27-1, p. 8.

[178] *Id.*

[179] *Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 791 (W.D. Tex. 2020) (emphasis in original) (citing *Lada v. Wilkie*, 250 F.2d 211, 212–15 (8th Cir. 1957) (reversing the district court's decision to grant the defendant's 12(b)(6) motion even though the court could not have possibly granted part of the relief that the plaintiffs requested; *Lasslett v. Tetra Tech, Inc.*, 2015 WL 13805181, at *2 (W.D. Tex. Sept.

viability of certain remedies outlined in the Amended Complaint, but this has no bearing on the viability of the underlying causes of action.

Accordingly, Sergeant Johnson's request for dismissal pursuant to Rule 12(b)(6) is denied.

### iii. Major Cupil's Rule 12(b)(6) Motion

#### a. Qualified Immunity and Discretionary Immunity

Major Cupil argues he is entitled to qualified immunity on any § 1983 claims asserted against him.[180] However, no § 1983 claims were asserted against Major Cupil; he has only been sued for state-law negligence.[181] Therefore, as explained previously with respect to Nurse Bringedahl and Major Blackard, Major Cupil has no argument for federal qualified immunity.[182]

Major Cupil also raises the issue of discretionary immunity under La. R.S. 9:2798.1.[183] However, as discussed above, the Court will not undertake the fact-intensive discretionary immunity analysis at the motion-to-dismiss stage.[184]

---

30, 2015) (explaining that a Rule 12(b)(6) motion challenges the sufficiency of the claim under Rule 8(a)(2), not the prayer for relief under Rule 8(a)(3)); *Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F. Supp. 3d 1159, 1164 (S.D. Cal. 2014) (holding that claims for punitive damages under the Lanham Act are inappropriate but not grounds for dismissal under Rule 12(b)(6)); 5B Wright & Miller, Fed. Prac. and Proc. § 1357 (3d ed. 2004) ("[I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court.")).

[180] Rec. Doc. 46-1, pp. 6–8.
[181] Rec. Doc. 47, p. 9.
[182] *Tuttle*, 68 F.4th at 976 (citing *Brown*, 519 F.3d at 238–39) (federal qualified immunity defense does not apply to state-law claims). *See also Williams*, 2024 WL 4241627, at *10 (quoting *Beroid*, 2022 WL 2826228, at *7) ("qualified immunity does not apply to Louisiana tort claims.").
[183] Rec. Doc. 46-1, p. 8.
[184] *Williams*, 723 F. Supp. 3d at 474 (citing *Bouchereau*, 2015 WL 5321285, at *15; *Lee*, 2017 WL 5349493, at *12). *See also Lambert*, 706 So.2d at 177–78.

### b.  Sufficiency of Allegations

Major Cupil only makes a merits-based argument for dismissal in connection with § 1983 claims.[185] As stated, Plaintiff does not bring a § 1983 claim against Major Cupil. Because he made no argument as to the merits of Plaintiff's negligence claim, the Court will deny Major Cupil's Motion in this respect.

### C.  Rule 12(e) Motion for More Definite Statement

Sergeant Johnson additionally requests Plaintiff be ordered to provide a more definite statement.[186] Rule 12(e) provides that a motion for more definite statement may be filed when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]"[187] In evaluating a motion for more definite statement, courts consider whether the complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."[188] Such motions are disfavored and granted sparingly.[189] However, in the words of the Supreme Court, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate.[190] A party may not use a Rule 12(e) motion as a substitute for discovery;[191] however, "[i]f details are necessary in order to make a vague

---

[185] Rec. Doc. 46-1, pp. 3–5.
[186] Rec. Doc. 27-1, pp. 9–10.
[187] Fed. R. Civ. P. 12(e).
[188] *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006) (quoting *Advanced Communications Technologies, Inc. v. Li*, No. 05 Civ. 4628, 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005)) (citing *Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y. 1986)) (internal quotation marks omitted).
[189] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013).
[190] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).
[191] *Id.*

complaint intelligible, the fact that the details also are subject to the discovery process should not preclude their production under Rule 12(e)."[192]

Sergeant Johnson argues he "is unable to properly identify which causes of action are aimed at him individually" because of the operative Complaint's inconsistency in its references to Sergeant Johnson.[193] For example, Sergeant Johnson complains that some parts of the Complaint only reference a "Master Sergeant" without specifically mentioning Sergeant Johnson by name.[194]

Although the operative Complaint is not a model of clarity, it is sufficiently clear to put Sergeant Johnson on notice of the claims brought against him and the grounds therefor. The operative Complaint's references to the "Defendant Master Sergeant" are reasonably interpreted to apply to Sergeant Johnson, as he is the only Defendant to whom that title pertains. Because the complaint is not "so vague or ambiguous that [Sergeant Johnson] cannot reasonably prepare a response,"[195] the Court denies the Rule 12(e) Motion.

## III.    CONCLUSION

For the foregoing reasons,

The Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) filed by Defendants Major Dale Blackard, Nurse Karla Bringedahl, and the Louisiana Department of Public Safety and Corrections[196] is DENIED.

---

[192] 5C Wright & Miller, Fed. Prac. and Proc. Civ. § 1376 (3d ed.).
[193] Rec. Doc. 27-1, pp. 9–10.
[194] *Id.*
[195] Fed. R. Civ. P. 12(e).
[196] Rec. Doc. 25.

The Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) and request for a more definite statement pursuant to Rule 12(e) filed by Defendant Sergeant Pharoah Johnson[197] are DENIED.

The Motion to Dismiss pursuant to Rule 12(b)(6) filed by Defendant Major Andrew Cupil is DENIED.[198]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 12th day of _____March_____, 2025.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[197] Rec. Doc. 27.
[198] Rec. Doc. 46.